UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
JACOB FRYDMAN,

                                       **Case No.: 1:25-cv-9192 (JMF) (GS)**

                  Plaintiff,

– against –

ILEVU YAKUBOV (a/k/a LEO JACOBS), STEFANY
ARTEGA, and JACOBS P.C.,

                  Defendants.
------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**


                                       **SAGE LEGAL LLC**
                                       Emanuel Kataev, Esq.
                                       18211 Jamaica Avenue
                                       Jamaica, NY 11423-2327
                                       (718) 412-2421 (office)
                                       (917) 807-7819 (cellular)
                                       (718) 489-4155 (facsimile)
                                       emanuel@sagelegal.nyc

                                       *Attorneys for Defendants*

**PRELIMINARY STATEMENT**

Defendants Ilevu Yakubov a/k/a Leo Jacobs ("Jacobs"), Stefany Artega ("Artega"), and Jacobs P.C. (the "Firm") (collectively hereinafter "Defendants") respectfully submit the instant memorandum of law in further support of its motion to dismiss the Plaintiff's, Jacob Frydman ("Frydman" or "Plaintiff"), Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rule" or "Rules").

Plaintiff fails to properly plead that that he is entitled to the protections of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). As set forth in further detail below, Frydman's allegations that he is owed $125,614.08 for professional services rendered does not give rise to an employer-employee relationship, and Plaintiff's bare-bones pleadings are insufficient to allege same.

Further, Plaintiff refers to restraining notices issued against him as the basis for the Firm's alleged refusal to pay him for professional services rendered. This is a valid basis to not pay Frydman directly, as Article 52 of the New York Civil Practice Law and Rules ("CPLR") prohibits one from paying an independent contractor such as the Plaintiff, because doing so would subject the Firm to liability from Frydman's judgment creditor.

In sum, the Firm did exactly what it was obligated to do upon receipt of the restraining notices. As explained below, Frydman has no viable cause of action against Defendants, both because of the restraining notice and for the separate reason that Frydman fails to properly plead an employer-employee relationship. Further, if Frydman disagreed with the Firm's decision to remit payment to his creditor, his only recourse would be to seek relief against the judgment creditor in the underlying action, not against the Defendants.

**LEGAL STANDARD**

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

*First*, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; see also Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).

*Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." See Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations must meet a standard of "plausibility." See Iqbal, 556 U.S. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557 (2007).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678.

Material outside of the complaint may only be "considered at the motion to dismiss stage if it is attached to the complaint, if the complaint incorporates it by reference, if the plaintiff relied on the document in bringing the suit, or if it is a document of which the Court may take judicial notice." See Feliz v. City of N.Y., No. 19-CV-6305 (AJN), 2022 WL 446043, at *3 (S.D.N.Y. Feb 14, 2022).

The Court may also consider material attached to a *pro se* litigant's opposition to a motion to dismiss. See, e.g., Rodriguez v. Rodriguez, No. 10-CV-891 (LGS), 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a *pro se* pleading, a court may consider factual allegations contained in a *pro se* litigant's opposition papers and other court filings."); Smith v. Cty. of Westchester, No. 17-CV-9858 (VB), 2019 WL 3006407, at *4 n.3 (S.D.N.Y. July 10, 2019) (considering exhibit to plaintiff's opposition at the motion to dismiss stage).

Bearing this legal standard in mind, for the reasons set forth in the Argument section below, the complaint must be dismissed for failure to state a claim upon which relief can be granted.

## FACTS

For purposes of the instant motion, Defendants submit that the following facts may be considered as true,[1] and specifically exclude facts which they respectfully submit constitute bald legal conclusions.

Frydman performed professional services for the Firm. See ECF Docket Entry 1 ¶ 10. As of February 28, 2025, the Firm owed Frydman $125,614.08 for professional services rendered, which Defendants have refused to pay in light of restraining notices issued to the Firm by judgment creditors against Frydman. Id. ¶¶ 11-12. Defendants provided Plaintiff with notice that they are restrained from paying him due to the restraining notices. Id. ¶ 13. On March 29, 2025, Frydman demanded immediate payment of the aforesaid sum. Id. ¶ 16. Jacobs and Artega are officers and agents of the Firm. Id. ¶ 20.

---

[1] Defendants dispute these facts, but recite them in light of the standard on a Rule 12(b)(6) motion.

On January 14, 2025, the Firm was served with a restraining notice and information subpoena, as well as an income execution. See Declaration of Emanuel Kataev, Esq. ("Kataev Decl.") ¶ 3, Exhibits ("Exs.") "A" and "B."

## ARGUMENT

I. **Plaintiff's Claims Fail as a Matter of Law**

    a. **Plaintiff's First Cause of Action, for Violation of the FLSA Fails**

"To establish liability under the FLSA, a 'plaintiff must prove the following: (1) the defendant is an employer subject to ... [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of ... [the] FLSA; and (3) the employment relationship is not exempted from ... [the] FLSA.'" See Ferreira v. Brooklyn's Constructions & Desings Inc., No. 22 CIV. 03796 (MKB) (VMS), 2024 WL 5386542, at *6 (E.D.N.Y. Mar. 15, 2024).

To make a *prima facie* showing of a violation under the minimum wage and overtime provisions of the FLSA, Plaintiff must be a covered employee under the FLSA. See Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011).

To determine whether an employee-employer relationship exists under the FLSA, courts in the Second Circuit have considered: '(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.'" Id. (internal citations omitted)

Here, Plaintiff does not adequately plead the existence of an employment relationship under the FLSA.

Plaintiff fails to allege: (i) that the Firm, let alone Jacobs or Artega, exercised any control over him; (ii) whether he had any opportunity for profit or loss in the professional services he rendered to the Firm; (iii) the degree of skill required by him to perform professional services; (iv) how long he worked for the Firm and how his alleged damages were determined; and (v) the nature of the work he performed.

Moreover, "[u]nder the FLSA and NYLL, "[a]n employee cannot state a claim for a minimum wage violation 'unless [her] average hourly wage falls below the ... minimum wage.' [internal citations omitted]." See Baldia v. RN Express Staffing Registry LLC, 633 F. Supp. 3d 693, 712 (S.D.N.Y. 2022). "Under what has become known as the Klinghoffer rule, no minimum wage violation occurs so long as the total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the applicable minimum wage." See Baldia, 633 F. Supp. 3d at 712 (internal citations omitted).

"An employee cannot state a claim for a minimum wage violation 'unless [his] average hourly wage falls below the federal minimum wage.'" See Johnson v. Equinox Holdings, Inc., No. 13-CIV.-6313 (RMB) (JLC), 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (citing Lundy v. Catholic Health Sys. Of Long Island, Inc., 711 F.3d 106, 115 (2d Cir.2013)). Under the FLSA, the federal minimum wage is $7.25 per hour. See 29 U.S.C. § 206(a)(1)(C).

Here, Plaintiff's allegations leave the reader clueless as to how he derived the amount due for his professional services rendered. Plaintiff does not allege: (i) what period of time he worked for the firm; (ii) how many hours he worked in any given week; or (iii) how much he was paid in any given week. Because it is impossible to determine these facts based on these pleadings, the complaint must be dismissed.

Accordingly, Plaintiff has failed to state his first claim under the FLSA.

b.  **Plaintiff's Second Cause of Action, for Violation of the NYLL Fails**

28 U.S.C. § 1367(a) provides a district court with "supplemental jurisdiction over all other claims that are so related to claims" within the district court's original jurisdiction "that they form part of the same case or controversy."

But the "district court[ ] may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction. Id. § 1367(c)(3). Indeed, the Second Circuit has stated that "where the federal claims are dismissed before trial, the state claims should be dismissed as well." Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014).

Because the FLSA claim should be dismissed, this Court should decline to exercise supplemental jurisdiction over the NYLL claim.

Regardless, should the Court choose to exercise jurisdiction over the state law claims, the NYLL claim fails on the merits as well.

"The NYLL defines an employee as 'any person employed for hire by an employer in any employment,' N.Y. Lab. L. § 190(2), and an employer is described as 'any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service.' Id. § 190(3).

Courts in the Second Circuit have established that the NYLL's definitions of 'employee' and 'employer' are analogous to those under the FLSA. See Singh v. Mowla, 19 Civ. 4687 (PKC) (LB), 2022 WL 17820099, at *8 n.8 (E.D.N.Y. Sept. 30, 2022) (citing Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011))." See Ferreira, 2024 WL 5386542, at *8.

"'Although slightly different than the FLSA inquiry, the standard for determining a worker's status as an employee or independent contractor under [the NYLL] is similar, and accounts for some of the same factors. Instead of focusing on the economic reality of the situation, New York law focuses on the degree of control exercised by the purported employer over the results produced or the means used to achieve the results.' Velu, 666 F. Supp. 2d at 306-07. 'In determining whether a person is an 'employer' for purposes of NYLL ... courts consider whether the alleged employer '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'' In re Stage Presence Inc., 555 B.R. 166, 179 (Bankr. S.D.N.Y. 2016) (citing Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999)). In order to assess control under the NYLL, Second Circuit courts have also looked at 'whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule.'" Velu, 666 F. Supp. 2d at 307 (internal citations & quotation marks omitted)." See Ferreira, 2024 WL 5386542, at *8." Id.

Again, as Defendants have set forth in the above section on the FLSA, Plaintiff fails to plead any facts to give rise to an inference that he was an employee of the Firm. Defendants respectfully incorporate by reference their foregoing arguments in support of dismissal of the FLSA claim. Accordingly, Plaintiff has failed to state a claim under the NYLL.

### c. Plaintiff's Third Cause of Action for Individual Liability of Corporate Officers Fails

Defendants incorporate by reference their foregoing arguments in favor of declining to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, given Plaintiff's failure to state a federal claim.

Defendants likewise incorporate by reference their foregoing arguments that Plaintiff is not an employee and is otherwise exempt under the NYLL.

Defendants also respectfully submit that none of the facts pled in the complaint give rise to individual liability under the FLSA or NYLL, as there are no allegations concerning the individual defendants' power to hire, fire, set schedules, set wages, or otherwise set the terms and conditions of employment of Plaintiff. Indeed, as argued *supra*, Plaintiff entirely fails to plead the existence of an employer-employee relationship with the Firm, let alone Jacobs and Artega.

Accordingly, the third and final cause of action must be dismissed on the merits.

### d. The Restraining Notices Preclude Relief to the Plaintiff

Plaintiff references the existence of restraining notices entered against him in his complaint. CPLR § 5222 ("Section 5222") authorizes "an attorney for [a] judgment creditor ... as an officer of the court, [to] serve a restraining notice on a third party who ... is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor has an interest." See CSX Transp., Inc. v. Island Rail Terminal, Inc., 879 F.3d 462, 470 (2d Cir. 2018) (quoting Section 5222(a)–(b)).

A party subject to such a restraining notice is "*forbidden* to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt except upon direction of the sheriff or pursuant to an order of the court." Id. (quoting Section 5222(b)) (emphasis added).

Critically, a Section 5222 restraining notice "is not a mere notice," but instead, "a form of process issued out of court intended to have the effect of [an] injunction." See Wimbledon Fin. Master Fund Ltd. v. Bienert Miller & Katzman, PLC, 619 F. Supp. 3d 351, 372 (S.D.N.Y. 2022).

Thus, compliance with Section 5222 is not discretionary and "*[a] third party may be held liable to a judgment creditor for its negligence in complying with a restraining notice.*" See CSX Transp., Inc. v. Emjay Envt'l Recycling, Ltd., No. 12-cv-01865, 2016 WL 755630, at *5 (E.D.N.Y. Feb. 25, 2016) (collecting cases) (emphasis added).

Restraining notices issued pursuant to CPLR § 5222 are effective against assets in which the judgment debtor has an "interest," and they "only reach property and debts with such a connection to the judgment debtor." See AG Worldwide v. Red Cube Mgmt. AG, No. 01-cv-1228 (GEL), 2002 WL 417251, at *8 (S.D.N.Y. Mar. 15, 2002). This includes serving a non-party. See Kelly Toys Holdings, LLC v. alialialiLL Store, 606 F. Supp. 3d 32, 57 (S.D.N.Y. 2022) ("A restraining notice may be served on both the judgment debtor and third parties who hold assets of the judgment debtor" (citing N.Y. CPLR § 5222(a) (restraining notice "may be served on any person"); and N.Y. CPLR § 5222(b) (addressing restraining notices served both on judgment debtor and on "a person other than the judgment debtor"))). The non-discretionary compliance required of a garnishee with a Section 5222 restraining notice, once it has actual notice of the restraining notice, confers a statutory duty owed to a judgment creditor. See Wimbledon Fin., 619 F. Supp. 3d at 372 ("[U]nder New York law, the statutory duty owed to a judgment creditor to comply with a restraining notice is not limited to the judgment debtor. A third party may be held liable to a judgment creditor for its negligence in complying with a restraining notice[.]"); see also Mazzuka v. Bank of N. Am., 53 Misc. 2d 1053, 1056 (N.Y. Civ. Ct. 1967) (concluding that bank "[u]ndeniably ... was under a statutory duty owing to plaintiff as a judgment creditor to obey the [Section 5222] restraining notice"); accord Salles v. Chase Manhattan Bank, 12 Misc.3d 1165A (N.Y. Sup. Ct. 2006) (concluding defendant "refuted any claim that it was deleterious in its duties with regard to the restraining notices ... it received" from judgment creditor).

Based on the foregoing, and Plaintiff's admission in his pleadings that the Firm was served with a restraining notice against him, the Firm properly withheld any compensation due to him. See Kataev Decl. ¶¶ 3-4, Exs. A, B, and C. Critically, Frydman was not without recourse to address any basis to vacate or modify the restraining notice. See CPLR § 5222-a (providing notice of procedure to vacate restraining notice on various grounds within twenty (20) days of notice). Rather than availing himself of these measures, Frydman has regrettably filed suit against the Firm, Jacobs, and Artega, who are each powerless to pay him in light of the unequivocal restraint placed upon them by Article 52 of the CPLR. Indeed, should the Firm violate the restraining notice, they would be subject to liability by Frydman's judgment creditors.

Accordingly, for this separate reason, the complaint must be dismissed because, based on Plaintiff's own allegations, the Defendants are merely complying with the injunction attendant to the issuance of a restraining notice.

## CONCLUSION

Based on the foregoing, Defendants respectfully submit that that the Court should dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated: Jamaica, New York
January 29, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

By: */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*

**VIA ECF**
Jacob Frydman, *pro se*
845 United Nations Plaza
Apartment 44D
New York, NY 10017
jf@frydco.com

*Plaintiff pro se*

## **WORD COUNT CERTIFICATION**

I, Emanuel Kataev, Esq., hereby certify – under penalty of perjury – that the foregoing memorandum of law in support of Defendants' motion to dismiss, which was prepared using the Times New Roman 12-point typeface, complies with ¶ 4(C) of this Court's Individual Rules and Practices in Civil Cases in that it contains 2,897 words, excluding the parts of the document that are exempted by such rules. In preparing this certification, I have relied on the word count of the word processing system (i.e., Microsoft Word) used to prepare this certification.

Dated: Jamaica, New York
January 29, 2026

                                                   **SAGE LEGAL LLC**

                                                   _/s/ Emanuel Kataev, Esq._
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*

**VIA ECF**
Jacob Frydman, *pro se*
845 United Nations Plaza
Apartment 44D
New York, NY 10017
jf@frydco.com

*Plaintiff pro se*